IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SUSIE GRISSOM and
LAKESHIA LOWE                                                                                    PLAINTIFFS

v.                                                    Case No. 4:22-cv-04049

UNION PACIFIC RAILROAD
COMPANY                                                                                            DEFENDANT

**ORDER**

Before the Court is Defendant Union Pacific Railroad Company's Motion for Summary Judgment. ECF No. 10. Plaintiffs Susie Grissom and Lakeshia Lowe have responded. ECF No. 16. Defendant has replied to Plaintiffs' response. ECF No. 25. Thus, the Court finds that the matter is ripe for consideration.

**I. BACKGROUND**

The record, viewed in the light most favorable to Plaintiffs, reveals the following facts. On April 20, 2019, a small fire began in Plaintiffs' residence, located at 101 South Pecan Street in Stamps, Arkansas. At 12:13 p.m., the Stamps Fire Department received notification of the fire but was informed that Defendant's train was parked on the tracks and was blocking the Pecan Street Crossing, the only way to access Plaintiffs' property. Thus, even though the Stamps Fire Department was located less than a mile away from Plaintiffs' residence, the responding firefighters attempted to take an alternate route to bypass Defendant's train and reach Plaintiffs' property. However, this alternate route, which was approximately 9.8 miles in length, was also inaccessible.[1] At 12:28 p.m., the responding firefighters arrived at the Pecan Street Crossing with the firetrucks'

---

[1] Plaintiffs note that this alternate route required the responding firefighters to travel down U.S. Highway 82, which was blocked due to a "downed power line." ECF No. 3, at 2-3.

lights and sirens activated, but Defendant's train was still parked at the crossing. Ultimately, by the time that Defendant moved its train and the Stamps Fire Department reached Plaintiffs' residence, the once-small fire had engulfed the property. The fire destroyed the primary residence (a manufactured home), as well as a "frame house," a storage building, a 2001 Ford F-150, a Honda Accord, and other personal property.

On April 19, 2022, Plaintiffs filed a complaint against Defendant in the Circuit Court of Lafayette County, Arkansas. On June 2, 2022, Defendant, relying on diversity jurisdiction, removed the action to the United States District Court for the Western District of Arkansas. ECF No. 2. Plaintiffs bring a negligence claim against Defendant. Plaintiffs' claim can be summarized as follows: Defendant had a duty to exercise ordinary care and breached that duty when it failed to move the train, allowing the emergency vehicles to cross at the Pecan Street Crossing. More specifically, however, Plaintiffs allege that Defendant was negligent by:

> Failing to keep the crossing in question open and otherwise allowing passage of local emergency vehicles through the crossing once they appeared with sirens and lights activated;
>
> Failing and/or refusing to allow local emergency service vehicles from responding to the fire alarm;
>
> Obstructing local emergency vehicles responding to a fire emergency;
>
> Failing to properly yield to local emergency responders;
>
> Failing to put in place safety procedures to allow for giving local emergency responders access to pass a crossing blocked by its parked train;
>
> Failing to notify local authorities, including the county, city, fire department and emergency management officials that the crossing in question would be blocked for a prolonged period of time by a parked or slow moving train;
>
> Failing to disconnect cars and move the train once the Defendant was aware that local emergency vehicles were blocked from reaching a fire;

> Failing to take steps to move or disengage cars from the train so local emergency vehicles could reach the fire; and
>
> Failing to exercise reasonable care and take appropriate action that would be commensurate with the unique, local and dangerous conditions of the railway crossing as the train crew and other Union Pacific Railroad Company employees knew or should have known that local emergency responders responding to the emergency were blocked by a train parked at that crossing.

ECF No. 3, at 4.  Ultimately, in Plaintiffs' view, Defendant is responsible for the damages sustained to their property, for a total of $225,000.

Defendant answered Plaintiffs' complaint, denying that its train was blocking the Pecan Street Crossing at the time of the fire.  ECF No. 4, at 2.  Defendant also affirmatively pled preemption, citing the ICC Termination Act (ICCTA), codified at 49 U.S.C. § 10101 et seq., as well as the Federal Railroad Safety Act (FRSA), codified at 49 U.S.C. § 20101 et seq.  On January 20, 2023, Defendant filed the instant motion seeking summary judgment, along with a statement of undisputed material facts and a brief in support of its motion.  ECF Nos. 10, 11, 12.  Defendant argues that summary judgment is appropriate because the ICCTA and FRSA preempt common law tort claims that interfere with railroad operations and safety.  Defendant alternatively argues that summary judgment is appropriate because the Commerce Clause of the United States Constitution prohibits states from burdening interstate commerce, and if the Court allows the instant action to proceed, "longstanding" Commerce Clause precedent would be violated.  ECF No. 12, at 3.

In response, Plaintiffs argue that because their claim against Defendant relates to what is "essentially [a] local safety hazard," it is not preempted by the FRSA.  ECF No. 16, at 1.  Further, Plaintiffs maintain that they do not seek to regulate railroad operations or train length such that the instant action would be preempted by the ICCTA or Commerce Clause.  Instead, Plaintiffs argue, "they seek to address Defendant's failures to adequately respond to local emergency responders attempting to reach a purely local fire emergency."  ECF No. 16, at 1-2.

3

Defendant replies and reiterates its belief that Plaintiffs' negligence claim is preempted. Defendant alternatively argues that even if not preempted, Plaintiffs cannot establish duty or proximate causation. ECF No. 25, at 12. Upon careful consideration and for the following reasons, the Court finds that Defendant's motion for summary judgment should be denied.

## II. DISCUSSION

The familiar summary judgment standard dictates that the Court should grant a motion for summary judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1047-48 (8th Cir. 2022) (citation omitted). "A fact is 'material' if it may 'affect the outcome of the suit.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In response, the nonmoving party "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Banks v. Deere*, 829 F.3d 661, 665 (8th Cir. 2016) (citation omitted). "[T]his Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists." *Burghardt v. Ryan*, 560 F. Supp. 3d 1093, 1103 (N.D. Ohio 2021). It is the function of the jury, not the Court, to make credibility

determinations, weigh evidence, and draw inferences from the facts. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Before turning to the merits of the parties' arguments, the Court must briefly consider what law applies to Plaintiffs' negligence claim. Defendant removed the instant action from Arkansas state court to this Court based on diversity jurisdiction. "As a federal court sitting in diversity jurisdiction, we apply the law that the forum state would apply." *Winthrop Res. Corp. v. Stanley Works*, 259 F.3d 901, 904 (8th Cir. 2001). Thus, the Court looks to Arkansas law, as it is the law of the forum. *White v. Lavigne*, 741 F.2d 229, 230 (8th Cir. 1984) ("In a federal diversity case the district court applies the substantive law of the forum state.").

The parties, through well-written and thoughtful briefings, offer two divergent views of how the law applies to and affects the Court's instant analysis. Those views can be summarized as follows. In Plaintiffs' view, this action is not preempted because it pertains to an isolated, inherently local instance in which Defendant should have exercised due care and moved its train so that emergency responders could reach the fire; this action does not interfere with or meaningfully affect the train's operations or interstate commerce. In Defendant's view, this action is preempted because regardless of how Plaintiffs frame their claim, they are asking the Court to interfere with train configurations and operations, as well as with interstate commerce; these matters are (absent narrow exceptions inapplicable here) governed exclusively by Congress and the United States Constitution. With these arguments in mind, the Court first considers whether Plaintiffs' claims are preempted by federal law.

### A. Preemption

"The Supremacy Clause of the United States Constitution provides that the law of the United States 'shall be the supreme law of the land.' It is well-established that Congress possesses the

power to preempt state law." *Mehl v. Canadian Pac. R.R., Ltd.*, 417 F. Supp. 2d 1104, 1107 (D.N.D. 2006) (citation omitted). The applicability of preemption is a legal question for the Court, not a jury, to decide. *See Nat'l Bank of Commerce of El Dorado v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). Notably, there is a presumption against preemption, which is relevant even where an express preemption clause exists. *MD Mall Assocs., LLC v. CSX Transp., Inc.*, 715 F.3d 479, 489 (3rd Cir. 2013). "[W]hen the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" *Franks Inv. Co. LLC v. Union Pac. R.R. Co.*, 593 F.3d 404, 407 (5th Cir. 2010) (en banc) (citation omitted). "[W]e assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.'" *MD Mall Assocs., LLC*, 715 F.3d at 489 (quoting *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (2005)). Here, Defendant cites to the FRSA and, alternatively, the ICCTA, as a source of preemption, and the Court addresses each statutory scheme in turn.[2]

**1. FRSA**

The instant action is not preempted by the FRSA. "The [FRSA] was enacted in 1970 'to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents.'" *Mehl*, 417 F. Supp. 2d at 1107 (quoting *Norfolk So. R&R. Co. v. Shanklin*, 529 U.S. 344, 347 (2000)). The FRSA "gives the Secretary of Transportation broad powers 'to promote safety in all areas of railroad operations.'" *Iowa, Chicago & E. R.R. Corp. v. Washington Cnty.*, 384 F.3d 557, 559 (8th Cir. 2004) (quoting 49 U.S.C. §§ 20101, 20234(a)). The FRSA contains an

---

[2]Defendant also briefly argues that the instant action is preempted by the United States Commerce Clause. However, this argument is based on Defendant's contention that the instant action will inevitably require Defendant to change the length of its trains. ECF No. 12, at 19. As explained below (when discussing FRSA and ICCTA preemption), the Court ultimately finds that the instant action will not burden Defendant's future operations, such as the length of its trains. Instead, Plaintiffs' claims are confined to the unique circumstances which took place on April 20, 2019. Thus, the Court finds no reason to engage in a separate Commerce Clause analysis.

express preemption clause, which "provides for the express preemption of 'laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security . . . .'" *Driessen v. Iowa, Chicago & E. R.R. Corp.*, 777 F. Supp. 2d 1143, 1149 (N.D. Iowa 2011) (quoting 49 U.S.C. § 20101). When a federal statute contains an express preemption clause, . . . the Court must focus on the plain wording of the clause, since it contains the best evidence of the scope of Congress' preemptive intent." *Mehl*, 417 F. Supp. 2d at 1108. The Court may also look to "'the statutory framework surrounding' the preemption statute, and the 'structure and purposes of the statute as a whole'" to discern Congress' intent. *City of Carthage v. Union Pac. R.R. Co.*, 603 F. Supp. 3d 711, 727 (W.D. Mo. 2022) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996)).

Coupled with this express preemption clause are two savings clauses, which specify instances in which FRSA preemption does not apply. The FRSA's first savings clause allows a state to

> adopt or continue a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement.

49 U.S.C. § 20106(a)(2). Alternatively, where a federal regulation "covers" the subject matter of a state's requirement, the FRSA's second savings clause allows that state to adopt a law, regulation, or order more stringent in nature, as long as that law, regulation, or order "(A) is necessary to eliminate or reduce an essentially local safety or security hazard; (B) is not incompatible with a law, regulation, or order of the United States Government; and (C) does not unreasonably burden interstate commerce." *Id.*; *see also Hesling v. CSX Transp., Inc.*, 396 F.3d 632, 640 (5th Cir. 2005) ("[Section] 20106 allows states to adopt additional or more stringent state regulation related to railroad safety to prevent a local hazard, *but only if the state law is not incompatible with federal*

7

*regulation and does not burden interstate commerce.*").  Finally, in 2007, Congress added a "clarification" provision, in which it specified that the FRSA should not "be construed to preempt an action under State law seeking damages for personal injury, death, or property damage" where the plaintiff alleges that the defendant has failed to comply with the federal standard of care, a state law, regulation, or order, or its own plan, rule, or standard.  49 U.S.C. § 20106(b).

The United States Supreme Court has elaborated upon § 20106(a)(2)'s "covers" language, explaining that the federal regulation must do more than "'merely "touch upon" or "relate to" that subject matter.'  In other words, 'preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.'"  *Driesen*, 777 F. Supp. 2d at 1149 (citation omitted); *see also MD Mall Assocs., LLC*, 715 F.3d at 491 (explaining that a federal regulation must "substantially subsume" the subject matter of the state law).  "It is the burden of the party advocating preemption under § 20106(a)(2) to show that a federal law, regulation, or order covers the same subject matter as the state law, regulation, or order it seeks to preempt."  *Duluth, Winnipeg & Pac. Ry. Co. v. City of Orr*, 529 F.3d 794, 797 (8th Cir. 2008).  If that party makes such a showing, "the burden shifts to the party resisting preemption to prove that the state law, regulation, or order meets all three requirements of the savings clause in § 20106(a)(2)."  *Id.*[3]

Defendant does not meet its burden of establishing that express preemption applies.  *See City of Orr*, 529 F.3d at 797.  Defendant does not direct the Court to any federal regulation touching upon the factual scenario currently before the Court, let alone a federal regulation that substantially subsumes (or "covers") the instant factual scenario.  *See Driesen*, 777 F. Supp. 2d at 1149.  Although Defendant outlines multiple federally regulated scenarios in which it blocks crossings

---

[3] As stated above, these requirements include a showing that the state regulation "is necessary to eliminate or reduce an essentially local safety or security hazard," "is not incompatible with a law, regulation, or order of the United States," and "does not unreasonably burden interstate commerce." 49 U.S.C. § 20106(a)(2).

8

(runarounds, pickup and switch-out of railcars; expiration of a train crew's legally authorized work hours; railyard congestion; mainline maintenance; or the passing of two trains, during which one train pulls into the siding and allows the other train to pass), it does not even tell the Court which of these activities, if any, it was participating in on April 20, 2019. *See* ECF No. 12, at 4-6.

Even assuming that there is a federal regulation that "covers" the instant scenario, these facts, in the aggregate, are sufficiently narrow to fit within the FRSA's "essentially local safety hazard" exception. *See* 49 U.S.C. § 20106(a)(2).[4] The Eighth Circuit has explained that an essentially local safety hazard, within the meaning of the FRSA's second savings clause, is a "local situation[] which [is] not statewide in character and not capable of being adequately encompassed within national uniform standards." *City of Orr*, 529 F.3d at 798 (citation omitted). When reaching this definition, the Eighth Circuit first considered the FRSA's legislative history, noting that the stated purpose of the FRSA's second savings clause "is to enable the states to respond to local situations not capable of being adequately encompassed within the uniform national standards. . . . Since these local hazards would not be statewide in character, there is no intent to permit a state to establish statewide standards superimposed on national standards covering the same subject matter." *Id.* (quoting H.R. Rep. No. 91-1194, at 11 (1970)).

Although often in the context of failure-to-brake or -slow claims, federal courts have carefully delineated instances in which an "essentially local safety hazard" exists. For example, courts have found that "a child standing on a railway" constitutes an "essentially local safety hazard," *O'Bannon v. Union Pac. R.R. Co.*, 960 F. Supp. 1411, 1420-21 (W.D. Mo. 1997), as well

---

[4]Though not dispositive, in *BNSF Railway Company v. Hiett*, the Tenth Circuit expressly found that "[w]hile emergency responders' delayed ability to reach people on the other side of a blocked crossing and risky road-blockage-induced behaviors pose legitimate safety issues, they do not concern any 'hazard to the railroad system or its participants.'" 22 F.4th 1190, 1196 (10th Cir. 2022).

as a "motorist stranded on the crossing," *Herriman v. Conrail Inc.*, 883 F. Supp. 303, 307 (N.D. Ind. 1995), but courts have declined to recognize things like bad weather, *Cox v. Norfolk & W. Ry. Co.*, 998 F. Supp. 679, 685 (S.D.W. Va. 1998), or features adjacent to a railway such as swampy soil, extreme temperatures, lakes, buildings, and propane tanks, *City of Orr*, 529 F.3d at 796. Obviously, the "essentially local safety hazard" exception is quite narrow. Less-than-ideal weather conditions or distracting railway surroundings do not fit within this narrow exception because they are capable of statewide repetition and were capable of contemplation at the time that the federal regulations were promulgated. *See City of Orr*, 529 F.3d at 798.[5]

Plaintiffs argue that Defendant offers "a wildly expansive version of federal preemption," which "leav[es] the reader with the impression that any state law which affects railroad operators to any degree is preempted." ECF No. 18. Plaintiffs further contend that there are "no federal regulations addressing what train crews must do" in a scenario like that which arose on April 20, 2019, and because the instant action poses a unique factual scenario—or an essentially local safety hazard—this claim falls within the FRSA's second savings clause. ECF No. 18. In response, Defendant contends that the instant scenario does not fit within this exception because it can occur in other parts of the state.

Certainly, in perhaps many parts of the state, personal properties are located adjacent to railroad tracks and residents (or emergency responders) may be required to cross those tracks to reach their homes. The Court agrees with Defendant insofar as Defendant argues that, if this action precluded all trains in Arkansas from blocking any crossing that serves as a thoroughfare to private property, the instant action would affect Defendant's operations in a manner preempted by the

---

[5]Alternatively, courts have recognized that an essentially local safety hazard exists where, for example, a vehicle is approaching the crossing and the train's engineers "knew or should have known" that a collision was imminent. *Campbell v. Union Pac. R.R. Co.*, 616 S.W.3d 451, 470 (W.D. Mo. 2020).

FRSA. *See, e.g.*, ECF No. 25, at 10 ("Tracks cut through countless towns in Arkansas, and when a train has to block the crossing, emergency vehicles will be delayed. . . . Indeed, if Union Pacific is precluded from occasionally blocking the Pecan Street crossing as a result of Plaintiffs' lawsuit, it will necessarily have to avoid blocking all crossings throughout Arkansas to avoid similar tort liability."). However, Plaintiffs' claims are more unique than Defendant suggests. On April 20, 2019, the Pecan Street Crossing was the *only* way to reach Plaintiffs' residence; Plaintiffs' residence was adjacent to the tracks; a fire started at Plaintiffs' residence; the fire grew quickly; emergency responders arrived at the Pecan Street Crossing with lights and sirens blaring; and the train's engineers knew or should have known that, at the very least, destruction of Plaintiffs' property was imminent if the emergency responders were not allowed to cross.

The mere fact that blocked-crossing claims can implicate the length or operation of a train does not mean that Arkansas tort law is preempted here, where Plaintiffs simply argue that Defendant should have moved its train, in whatever manner it deemed appropriate and in accordance with applicable federal regulations, to prevent the imminent destruction of their property. *Cf. Dresser*, 809 N.W.2d at 723 ("The mere fact that the speed the train is traveling is tangentially related to how quickly it can be stopped does not transform the claim into an excessive speed claim. Nebraska tort law duties to exercise reasonable care could be violated even if the federal train speed limits are being followed."). Ultimately, therefore, the Court finds that FRSA preemption does not apply.

### 2. ICCTA

The Court also finds that the instant action is not preempted by the ICCTA.[6] The ICCTA grants the Surface Transportation Board (STB) exclusive jurisdiction in certain circumstances. *See*

---

[6]"Circuits examining the relationship between the ICCTA and FRSA 'have concluded that the federal statutory scheme places principal federal regulatory authority for rail safety with the [FRA], not the STB.'" *Hiett*, 22 F.4th at 1195-96

*City of Ozark v. Union Pac. R.R. Co.*, 843 F.3d 1167, 1169 (8th Cir. 2016). Defendant argues that "under both an express and as-applied analysis, the ICCTA preempts Plaintiffs' negligence claims." ECF No. 25, at 1.

The ICCTA contains a preemption provision, and as with the Court's analysis of the FRSA, the Court focuses on the plain wording of that provision, as it "necessarily contains the best evidence of Congress' pre-emptive intent." *Easterwood*, 507 U.S. at 664; *see also Mehl*, 417 F. Supp. 2d at 1108. The provision provides, in part, that the STB has jurisdiction over "transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers," as well as "the constructions, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State . . . ." *Id.* at 1170-71 (quoting 49 U.S.C. § 1051(b)). The Tenth Circuit has described "transportation" as encompassing "physical instrumentalities 'related to the movement of passengers or property,'" and "services related to that movement." *Emerson v. Kansas City S. Ry. Co.*, 503 F.3d 1126, 1129 (10th Cir. 2007) (citation omitted).

"Courts that have considered the ICCTA preemption clause have found its language to be clear and broad." *Wisconsin Cent. Ltd. v. City of Marshfield*, 160 F. Supp. 2d 1009, 1013 (W.D. Wis. 2000). "However, it is also well-settled that although ICCTA's preemption language is unquestionably broad, 'it does not encompass everything touching on railroads.'" *Fleury v. Union Pac. R.R. Co.*, 528 F. Supp. 3d 885, 894 (N.D. Ill. 2021) (citation omitted). Importantly, the STB

---

(citation omitted). Thus, "ICCTA preemption 'applies only to non-safety railroad regulation and . . . Congress intended to retain the well settled safety authority of the FRA and the states under [the] FRSA when it enacted [the ICCTA].'" *Id.* at 1196 (second and third alterations in original) (citation omitted).

has held that "the ICCTA does not [necessarily] usurp the right of state and local entities to impose appropriate public health and safety regulation on interstate railroads." *Id.* (quoting *King Cnty., Wa—Pet. for Declaratory Order*, No. 32974, 1996 WL 545598, at *3 (S.T.B. Sept. 25, 1996)). Once again, the presumption against preemption applies. *Franks Inv. Co. LLC*, 593 F.3d at 407.

The Court first finds that the instant action is not expressly preempted by the ICCTA. Express or categorical preemption "occurs when a state or local action is preempted on its face despite its context or rationale." *Union Pac. R.R. Co. v. Chicago Transit Auth.*, 647 F.3d 675, 679 (7th Cir. 2011). As the Fifth Circuit has explained, a state court action is expressly preempted where it seeks to regulate the operations of rail transportation. *See Guild v. Kansas City Southern Ry. Co.*, 541 F. App'x 362, 366 (5th Cir. 2013). In 2005, the STB explained that there are two categories of state actions that the ICCTA expressly or categorically preempts:

> [T]he courts have found two broad categories of state and local actions to be preempted regardless of the context or rationale for the action. The first is any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized.
>
> Second, there can be no state or local regulation of matters directly regulated by the Board—such as the construction, operation, or abandonment of rail lines; railroad mergers, line acquisitions, and other forms of consolidation; and railroad rates and service.
>
> Both types of categorically preempted actions by a state or local body would directly conflict with exclusive federal regulation of railroads. Accordingly, for those categories of actions, the preemption analysis is addressed not to the reasonableness of the particular state or local action, but rather to the act of regulation itself.

*CSX Transp., Inc.-Pet. For Declaratory Order*, No. 34662, 2005 WL 1024490, at 2-3 (S.T.B. May 3, 2005) (citations omitted). "State and local laws that fall within one of these categories 'are a *per se* unreasonable interference with interstate commerce'" and "once the parties have presented enough evidence to determine that an action falls within one of those categories, no further factual

13

inquiry is needed." *Fleury*, 528 F. Supp. 3d at 894 (citation omitted). "However, if a state law or regulation only has a 'mere remote or incidental effect on rail transportation,' it is not expressly preempted." *Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696, 704 (5th Cir. 2022) (citation omitted).

Defendant asserts that Plaintiffs' "negligence allegations necessarily involve Union Pacific's decisions about track usage, train movement, train speed, and the length of trains and are thus categorically preempted." ECF No. 12, at 9. Defendant also cites myriad cases in which courts have found that ICCTA express preemption applies. *See* ECF No. 12, at 9-10. However, aside from offering this lengthy string of authority, Defendant does not explain *why* the instant action is expressly preempted. Defendant does not recognize the blatant differences between the cases cited and the instant action, such as the fact that the cases cited concern blocked crossing statutes while the instant action concerns an isolated, factually unique scenario. Because state regulations like blocked crossing statutes inevitably inhibit railway operations in a way dissimilar to Plaintiffs' instant negligence action, the Court does not find Defendant's cited cases to be instructive here. Moreover, Defendant relies on cases such as *Tubbs v. STB*, which allegedly demonstrates that the ICCTA preempts state-law negligence claims. ECF No. 25, at 3. However, the *Tubbs* decision discusses only as-applied preemption and is not helpful to the instant express-preemption analysis. *See* 812 F.3d 1141, 1144-45 (8th Cir. 2015).

Looking to the ICCTA's plain language, the Court finds that although the preemption provision is undoubtedly broad, the plain language of the statute cannot be read to encompass the conduct that Plaintiffs complain of here because the instant action's effects on rail operations are merely incidental. *See City of Palestine*, 41 F.4th at 704. This conclusion is supported by other courts' analyses. *See, e.g.*, *Guild*, 541 F. App'x at 367 (finding no express ICCTA preemption

14

where "effects of state negligence law on rail operations [were] merely incidental" (citation omitted)); *Franks*, 593 F.3d at 413 (finding no express ICCTA preemption because the plaintiff's tort-law action did not "seek to regulate the operations of rail transportation"); *cf. Rawls v. Union Pac. R.R.*, No. 1:09-cv-01037, 2012 WL 2803764, at *8 (W.D. Ark. July 10, 2012) (finding no *complete* ICCTA preemption because the plaintiffs' claims were "typical negligence claims seeking damages for a typical crossing accident that do not directly attempt to manage or govern Union Pacific's decisions in the economic realm" and had only "a remote or incidental effect on rail transportation").[7]

The Court also finds that the instant action is not preempted by the ICCTA as applied. In support of its argument that the instant action is preempted by the ICCTA as applied, Defendant contends that it cannot "avoid blocking the crossing" without "run[ning] shorter trains, extend[ing] the length of the side track, and/or rerout[ing] or reschedul[ing] trains—or forego[ing] runarounds and train meets altogether." ECF No. 12, at 11. Defendant maintains that, "[i]n sum, there is no way for Union Pacific to avoid liability on Plaintiffs' claims unless it alters the length, speed, or scheduling of its trains or its use of the siding at the Pecan Street crossing." ECF No. 12, at 12.

To determine whether the action is preempted as applied, the Court must determine "whether that action would have the effect of preventing or unreasonably interfering with railroad transportation." *CSX Transp., Inc.-Pet. For Declaratory Order*, 2005 WL 1024490, at *3; *see also City of Ozark*, 843 F.3d at 1169 (explaining that the STB's "governing preemption standard" asks whether the remedy sought by the plaintiff "would 'impede rail operations or pose undue safety

---

[7] The Court recognizes that complete preemption is not at-issue here. *See Rawls*, 2012 WL 2803764, at 3 (warning courts not to "conflate ordinary preemption and complete preemption"); ECF No. 25, at 5 ("Here, only ordinary preemption is at issue . . . ."). Nevertheless, *Rawls* is helpful insofar as it stands for the proposition that a state-law negligence claim may only have an incidental effects on rail transportation and operations.

15

risks.'" (citation omitted)). As Defendant correctly argues, the correct analysis "turns on the effect of the state law remedy." ECF No. 25, at 2. Defendant directs the Court to *City of Ozark v. Union Pacific Railroad Co.*, in which the Eighth Circuit explained that a "claim is preempted . . . if the requested remedy will, in the words of the STB's governing test, 'impede rail operations or pose undue safety risks.'" ECF No. 25, at 2 (emphasis omitted) (quoting *City of Ozark*, 843 F.3d at 1172). This is a fact-specific analysis. *See Tubbs*, 812 F.3d at 1144. "[I]t is well settled that states cannot take an action that would have the effect of foreclosing or unduly restricting a railroad's ability to conduct any part of its operations or otherwise unreasonably burdening interstate commerce." *CSX Transp., Inc.*, 2005 WL 1024490, at *4.[8]

The Court finds that, under this unreasonable-burden-or-interference test, Plaintiffs' claims are not preempted because the instant action will not effectively "impede rail operations or pose undue safety risks." *City of Ozark*, 843 F.3d at 1172. Although Defendant portrays the instant action as being catastrophic to the future independence of its rail operations, Plaintiffs do not, for example, seek to prevent Defendant from using the Pecan Street Crossing or to control the length of time that Defendant may be stopped at the Pecan Street Crossing. Plaintiffs' complaint pertains to an isolated incident of allegedly negligent behavior by Defendant and does not attempt to instate or enforce a rule applicable to Defendant's future operations. *Cf. Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 160 (4th Cir. 2010) (finding local permitting rule preempted because "requiring a rail carrier to obtain a locally issued permit before conducting rail operations— generally referred to as 'permitting' or 'preclearance' requirements—will impose an unreasonable burden on rail transportation."). Therefore, finding that as-applied preemption is also inapplicable, the Court finds that Plaintiffs' claims are not preempted by federal law.

---

[8]Courts refer to this test as the "unreasonable-burden-or-interference test." *Tubbs*, 812 F.3d at 1145 (referencing "unreasonable-burden-or-interference test for as-applied preemption under the ICCTA").

## B. Merits

Having determined that the instant action is not preempted, the Court must determine whether summary judgment, on the action's merits, is appropriate. The Court finds that it is not, as questions of material fact exist. Under Arkansas law, to establish a prima facie negligence case, "a plaintiff must show that damages were sustained, that the defendant breached the standard of care, and that the defendant's actions were the proximate cause of the damages." *Union Pac. R.R. Co. v. Sharp*, 952 S.W.2d 658, 661 (Ark. Oct. 9, 1997). Here, the parties do not dispute that Plaintiffs sustained damages. Instead, the parties only contest the second and third negligence elements, breach of duty and proximate causation.[9]

"Negligence is defined to mean the failure to do something which a reasonably careful person would do, or the doing of something which a reasonably careful person would not do, under circumstances similar to those shown by the evidence in this case." *Wallace v. Broyles*, 961 S.W.3d 712, 715 (Ark. 1998). Actionable negligence requires that the actor "foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner," although it is unnecessary for the actor to foresee the particular injury that occurred. *Id.* The Arkansas Supreme Court has "previously defined proximate cause as 'that which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.'" *Sharp*, 952 S.W.2d at 662 (citation omitted). "Proximate causation is usually an issue for the jury to decide, and when there is evidence to establish a causal connection between the negligence of the defendant and the damage, it is proper for the case to go to the jury." *Pollard v. Union Pac. R.R. Co.*, 54 S.W.3d 559, 562 (Ark. Ct. App.

---

[9] Defendant raises its argument regarding breach of duty and proximate causation for the first time in its reply. *See* ECF No. 25, at 12.

17

2001). Stated differently, "proximate causation becomes a question of law only if reasonable minds could not differ." *Id.*

It is unclear, from the record currently before the Court, what activity Defendant was engaged in at the time of the at-issue fire that required Defendant to block the Pecan Street Crossing. The Court also cannot discern from the record how long Defendant was stopped at the Pecan Street Crossing, whether Defendant was aware of the fire at Plaintiffs' residence, whether Defendant was aware of the responding vehicles' sirens and lights, or whether Plaintiffs or the emergency responders asked Defendant to accommodate the emergency responders (and if so, if Defendant declined). These are only a few of the facts missing from the instant record, and each are material to determining whether Defendant was negligent on April 20, 2019.[10] *See Erickson*, 31 F.4th at 1047-48; *see also Sharp*, 952 S.W.2d at 66. With material facts currently unresolved, the Court cannot grant judgment in favor of Defendant as a matter of law.

### III. CONCLUSION

Accordingly, the Court Defendant's Motion for Summary Judgment (ECF No. 10) is hereby **DENIED**.

**IT IS SO ORDERED**, this 12th day of April, 2023.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[10] Moreover, in its Answer, Defendant altogether denied blocking the Pecan Street Crossing and, as far as the Court can discern, has not changed its position or otherwise admitted to blocking the crossing, as is alleged by Plaintiffs.

18